IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:11-CV-117-FL

| | |
|---|---|
| MELVIN D. LYONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DE's-24 & 26). The time for filing any responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this matter has been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-24) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-26) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff applied for Disability Insurance Benefits ("DIB") on February 9, 2009, alleging that he became unable to work on October 1, 2003. (Tr. 9). Plaintiff was insured for DIB through December 31, 2008. *Id.* at 9, 11. This application was denied initially and upon reconsideration. *Id.* at 9. A hearing was held before an Administrative Law Judge ("ALJ"), who

1

determined that Plaintiff was not disabled during the relevant time period in a decision dated September 24, 2010. *Id.* at 9-17. The Social Security Administration's Office of Hearings and Appeals denied Plaintiff's request for review on May 5, 2011, rendering the ALJ's determination as Defendant's final decision. *Id.* at 1-5. Plaintiff filed the instant action on July 11, 2011. (DE-1).

**Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
>
> 42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by

substantial evidence and whether the correct law was applied." <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

**<u>Analysis</u>**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

<u>Mastro v. Apfel</u>, 270 F.3d 171, 177 (4th Cir. 2001).

Plaintiff was insured for DIB through December 31, 2008. *Id*. at 16, 129. A person must be insured for disability insurance benefits in order to be eligible for such benefits. 42 U.S.C. § 423(a)(1). *See also*, 20 C.F.R. § 404.315. Therefore, the inquiry is whether substantial evidence supports the ALJ's finding that Plaintiff's impairments were not disabling on or before December 31, 2008.

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date through his date last insured. (Tr. 11). At step two, the ALJ found that Plaintiff suffered from the following

3

severe impairments: 1) lumbar disc disease with chronic pain; 2) hypertension; and 3) coronary artery disease *Id.* However, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id* at 11-12. Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work. *Id.* at 12. Specifically, the ALJ found that:

> during the period from October 1, 2003 through December 31, 2008, (date last insured) the claimant could sit, stand, and walk for up to 6 hours in an 8-hour day. He required a work environment which would have permitted him to change between sitting and standing positions as needed. He could lift 20 pounds occasionally and could lift and carry 10 pounds frequently. He was able to perform the mental demands of unskilled work.
>
> *Id.* at 12.

The ALJ then determined that Plaintiff was unable to perform his past relevant work. *Id.* at 15. However, based upon the testimony of a vocational expert, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* at 15-16. Accordingly, the ALJ determined that Plaintiff was not under a disability through his date last insured. *Id.* at 16-17.

The undersigned has reviewed the entire record and finds that these determinations were supported by substantial evidence. Moreover, the ALJ properly considered all relevant evidence, including the evidence favorable to Plaintiff, weighed conflicting evidence, and fully explained the factual basis for his resolutions of conflicts in the evidence. Plaintiff's argument relies primarily on the contention that the ALJ improperly weighed the evidence. However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, his claims are without merit.

Nonetheless, the undersigned shall now address Plaintiff's assignments of error.

**The ALJ properly assessed Plaintiff's credibility**

Plaintiff first argues that the ALJ improperly assessed his credibility. During the hearing in this matter, Plaintiff testified that he stopped working in September, 2003, because of "problems with . . . [his] back." (Tr. 27). However, he also noted that he stopped working because "[a]n opportunity came up . . .[to] retire, [and] . . . [he] just took advantage of the opportunity . . ." *Id.* Because of his back pain, Plaintiff stated that he had difficulty "just getting up out of the bed" and walking. *Id.* at 31. Specifically, Plaintiff noted that "[j]ust getting up out of bed is an accomplishment" and that he has trouble getting dressed. *Id.* at 39. According to Plaintiff, he could only could only walk "maybe a block or so" before needing to stop and rest. *Id.* at 38. Similarly, Plaintiff testified that he could only stand for about 5-10 minutes before needing to sit back down. *Id.* He also experiences pain running down his lower back down to his feet, and has "problems with . . . [his] hands." *Id.* at 31. Plaintiff also has difficulty lacing and putting on his shoes. *Id.* In addition, Plaintiff testified that he was incapable of sitting for long periods of time. *Id.* Specifically, Plaintiff indicated that he could only sit for 5-10 minutes at a time. *Id.* at 32. Plaintiff testified that he was not able to lift anything heavier than 10 pounds. *Id.* Despite his alleged limitations, Plaintiff was able to drive every day. *Id.* Likewise, despite his testimony of disabling back pain, Plaintiff also testified that he generally only went to the doctor for his annual physical. *Id.* at 33.

Plaintiff's wife also testified that Plaintiff had back pain. *Id.* at 42. She noted that she washes his back and feet for him because he cannot bend. *Id.* at 42-43. Likewise, she testified

5

that Plaintiff has a hard time reaching for objects if they are overhead. *Id.* at 43.

The ALJ made the following findings with regard to Plaintiff's credibility:

> At the hearing, the claimant testified to the duties required of his past jobs. He said that he stopped working in September, 2003 because of problems with his back. He had the opportunity to retire after working for UPS for 30 years and he began receiving a pension of about $5,000.00 per month. He said that he has never had back surgery. He does not know of a job that he could do because of his back problems.
>
> The claimant said that he hurt his back and it is a problem getting out of bed and walking. He has pain running from his lower back down to his feet. Sometimes his wife has to tie his shoes for him. He can sit for a while and then has to move around. The pain goes down his right leg and it feels like someone is sticking hot needles in his legs and buttocks.
>
> The claimant also said that he can sit for 5-10 minutes. He can drive and does drive almost every day, about 20 miles a day. It took him 1 ½ hours to get to the hearing. His wife drove him.
>
> The claimant is treated by his chiropractor and by Dr. Slater. He sees Dr. Slater once a year for his annual exam. His last examination was in 2009 . . .
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment as defined for the period through the date last insured.
>
> The claimant has reported having a history of degenerative disc disease. This has not been documented by radiological studies. He has low back pain with radiation to the right leg but he does not have any clinical signs of nerve root compression which might be expected based on the degree of pain alleged. The treatment notes from Dr. Slater show minimal medical findings prior to the date last insured. His visits were generally just for his annual examinations. Further, the claimant has not required such aggressive measures for symptom relief as use of steroid medication, epidural injections, application of TENS equipment, or enrollment in physical therapy or a pain management program. The claimant has required only over-the-counter medication for symptom relief. The treatment regimen, therefore, indicates that the claimant's symptoms are not as intractable as

6

alleged. The claimant has not developed any complications related to his hypertension such as retinopathy, nephropathy, cerebral ischemia, or congestive heart failure. He has evidence of a fixed perfusion defect noted on a cardiac stress test but he does not have any clinical evidence of ongoing cardiac ischemia. In addition, the medical evidence pertaining to the period through the date last insured does not reveal any evidence of a change in motor tone or bulk such as disuse atrophy, or other change in body habitus or constitutional appearance such as weight loss, which might be expected in a person whose activities are markedly restricted due to a debilitating disease process. These factors indicate that the claimant's allegations of functional restrictions are not fully credible as they pertain to the period through December 31, 2008.

There are no treating or examining medical source statements in the record. The state agency medical consultants' opinions were given little weight. At the initial level, those consultants found that the claimant could perform medium exertional activities through the date last insured and, at the reconsideration level, they found that there was insufficient evidence to evaluate the severity of the claimant's condition through the date last insured (Exhibits 4F-5F). Significant additional evidence submitted in conjunction with the claimant's request for a hearing reduces the comparable weight to be afforded those opinions.

To summarize, having considered the objective medical evidence, the claimant's subjective complaints, and the opinions of treating, examining, and non-examining physicians, the Administrative Law Judge finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with postural and mental restrictions.

*Id*. at 12-15.

These findings were supported by substantial evidence. For example, treatment notes from July 23, 2001 through November 10, 2005 routinely state that Plaintiff was "progressing well" with regard to his lower back pain. *Id.* at 305-308. Similarly, on several occasions Plaintiff reports for routine follow-ups and denies any new complaints. *Id.* at 241, 242, 247. Typically, no specific treatment is recommended for Plaintiff's back pain. *Id.* at 236, 241, 242, 247. Although Plaintiff was consistently diagnosed with degenerative disk disease of the lumbar spine, examining physicians rarely assessed Plaintiff with any specific functional limitations. *Id.*

7

Plaintiff had normal gait and station during a January 19, 2006 examination. *Id.* at 251. His spine was nontender to percussion. *Id.* During a March 13, 2007 "health maintenance exam", Plaintiff had no complaints. *Id.* at 247. It was noted on March 15, 2007 that Plaintiff was "walking or riding his bicycle outside 3 times per week for 1 hour." *Id.* at 243. He was encouraged to continue doing this. *Id.* On February 4, 2008, Dr. Douglas Slater noted that, despite "a protruding disk in his back that bothers him", Plaintiff: 1) walked on a regular basis; 2) did tasks around the house; and 3) took care of his mother. *Id.* at 236. Upon examination, Plaintiff's lower back was nontender. *Id.* No specific treatment plan was recommended for Plaintiff's back pain. *Id.* at 236-237. On August 4, 2008 Dr. Slater examined Plaintiff and noted, *inter alia*, that Plaintiff's blood pressure was borderline high and weight had increased. *Id.* at 235. No specific mention is made of back pain, and Dr. Slater stated that Plaintiff "otherwise looks good." *Id.* A straight leg raising test conducted on December 16, 2008 was negative. *Id.* at 315. Plaintiff was instructed to perform back exercises, and was prescribed Flexeril, Tylenol and Ibuprofen for his pain. *Id.*

Likewise, Plaintiff's hypertension is consistently described as well controlled. *Id.* at 236, 241, 242, 245.

In short, the ALJ properly pointed out that the medical record contained substantial evidence that was inconsistent with Plaintiff's subjective complaints.

"Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Furthermore, the regulations provide a two-step process for evaluating a claimant's subjective complaints of pain or other symptoms. 20 C.F.R. § 404.1529; Craig , 76 F.3d at 593-596. First, the ALJ must determine whether there is

8

objective medical evidence showing the existence of a medical impairment that could be reasonably expected to produce the pain or alleged symptoms. 20 C.F.R. § 404.1529(b); Craig, 76 F.3d at 594. Second, the ALJ evaluates the intensity and persistence of the symptoms to determine how they limit the capacity for work. 20 C.F.R. 404.1529(c); Craig, 76 F.3d at 595. The ALJ evaluates the intensity and persistence of the symptoms and the extent to which they limit a claimant's capacity for work in light of all the available evidence, including the objective medical evidence. 20 C.F.R. 404.1529(c). At the second step, however, claims of disabling symptoms may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of the symptoms. *See*, Craig, 76 F.3d at 595. Since symptoms can sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, all other information about symptoms, including statements of the claimant, must be carefully considered in the second part of the evaluation. 20 C.F.R. 404.1529(c)(2). The extent to which a claimant's statements about symptoms can be relied upon as probative evidence in determining whether the claimant is disabled depends on the credibility of the statements. SSR 96-7p, 1996 WL 374186, *4.

Here, the ALJ followed these standards in assessing Plaintiff's credibility. The ALJ's findings of fact demonstrate that the ALJ gave proper weight to all of Plaintiff's limitations and impairments in assessing Plaintiff's credibility. Likewise, the ALJ's citations to Plaintiff's medical records constitute substantial evidence which support that assessment. Accordingly, this assignment of error is without merit.

**The additional evidence presented by Plaintiff is not "new and material"**

Next, Plaintiff argues that "new and material evidence also justifies a reversal or remand in this case." (DE-25, pg. 9). Specifically, Plaintiff notes that two "months after the hearing, in

9

November of 2010, . . . [Plaintiff underwent] . . . an MRI of his lumbar spine . . . as well as an EMG study of the radiculopathy in his right leg." *Id.* These tests revealed: 1) "features of disk herniation with disk bulging and disk herniation most pronounced at the L4-L5 level"; and 2) "findings consistent with chronic right lower extremity lumbar radiculopathic changes with particular attention to the L4-L5 level." (Tr. 317, 320).

To merit remand, this evidence must meet the requirements of sentence six of 42 U.S.C. § 405(g) ("sentence six"). Sentence six permits remand "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). There are accordingly three distinct requirements under sentence six. *See,* Nuckles v. Astrue, 2009 WL 3208685, at *4 (E.D.N.C. Oct. 5 2009). First, the evidence must be new. Evidence is deemed new if it is not duplicative or cumulative of evidence already in the record. Wilkins v. Sec'y, Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). Evidence that was available during the administrative hearing but not submitted does not qualify as new evidence. Wilkins v. Sec'y of Health and Human Servs., 925 F.2d 769, 774, *rev'd on other grounds*, 953 F.2d 93 (4th Cir. 1991)(*en banc*).

Second, the evidence must be material. Evidence is material if there is a reasonable possibility that it would have changed the outcome. *See,* Wilkins, 953 F.2d at 96. Evidence is not material if it does not relate to the time period that was before the Commissioner. *See,* Edwards v. Astrue, 2008 WL 474128, at *9 (W.D.Va. February 20, 2008)("The [new evidence does] not relate back to the relevant time period as they were both done over 6 months after the ALJ rendered his decision.").

Third, there must be good cause for failing to submit the evidence earlier. This requirement for good cause was added by Congress in 1980. *See,* Social Security Disability Amendments of

10

1980, P.L. 96-265 § 307, 94 Stat. 441 (1980). The courts have recognized that Congress' intent was to permit remands pursuant to sentence six on a very limited basis. <u>Rogers v. Barnhart</u>, 204 F.Supp.2d 885, 892 (W.D.N.C. May 23, 2002) ("'Congress made it unmistakably clear' that it intended to limit remands for 'new evidence.' ")(*quoting* <u>Melkonyan v. Sullivan</u>, 501 U.S. 89, 99-100 (1991)). The burden of showing that the good-cause and other requirements of sentence six are met rests with the claimant. *See*, <u>Fagg v. Chater</u>, 106 F.3d 390, 1997 WL 39146, at *2 (4th Cir. Feb. 3, 1997).

The undersigned finds that evidence submitted by Plaintiff is not "new and material." First, these studies were performed almost two years after Plaintiff's date last insured. Thus, they do not relate to the time period before Defendant. Moreover, these studies do not convey the functional limitations that would result from these conditions. Just before these tests, on October 8, 2010, Plaintiff stated that his symptoms were relieved by chiropractic adjustments. (Tr. 310). He had full strength in all muscles and his gait was normal. *Id.* at 311. Again on November 11, 2010, Plaintiff reported decreased pain after chiropractic treatments. *Id.* at 312. Likewise, he also demonstrated full muscle strength and a normal gait. *Id.*

For these reasons this assignment of error is without merit.

**Conclusion**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-24) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-26) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Thursday, April 12, 2012.

WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE